WILLIAM PEIRSOLL AND OTHERS, APPELLANTS v. JAMES
ELLIOTT AND OTHERS, APPELLEES.

The complainants filed a bill for a perpetual injunction, and to oblige the appel-
lees to deliver up a deed of conveyance of lands, and which deed, in a suit
between the parties, had been declared by the court void on its face. "The
court is well satisfied that this would be a proper case for a decree according
to the prayer of the bill, if the defectiveness of the conveyance was not ap-
parent on its face, but was to be proved by extrinsic testimony." But where
the defectiveness is so apparent, the court will not order the deed to be deli-
vered up.

The defendants in their answer insist on their title both at law and in equity; and
on being left free to assert that title, if they shall choose o to do. A general
dismission of the bill with costs, the court assigning no reason for that dis-
mission, may be considered as a decree affirming the principles asserted in the
answer, as leaving the defendants at full liberty to assert their title in another
ejectment, and as giving some continuance to that title. The decree of the
circuit court dismissing the complainants' bill ought to be so modified as to ex-
press the principles on which the bill is dismissed, so as not to prejudice the
complainants.

In addition to the fact shown by the bill and answer, that the controversy be-
tween the parties as to the title to the lands was not abandoned by the defend-
ants, a fact which is entitled to some influence in the question of costs; the bill
prays that the defendants might be enjoined from committing waste while
they retained possession of the premises; that a receiver might be appointed,
and that an account of rents be taken. These are proper objects of equity ju-
risdiction. If they had been accomplished when the decree was pronounced,
the bill might have been dismissed, but not so far as is disclosed by the record,
with costs. The defendants were not entitled to costs.

APPEAL from the circuit court of the United States for
the district of Kentucky.

The case was argued by Mr Wickliffe for the appellants,
and by Mr Loughborough for the appellees.

The facts and pleadings are fully stated in the opinion of
the court.

Mr Chief Justice MARSHALL delivered the opinion of the
Court.

This is an appeal from a decree of the court of the United
States for the seventh circuit and district of Kentucky, dis-
missing the plaintiffs bill filed in that court, with costs.

The bill states that the plaintiffs are the heirs and represen-
tatives of Sarah G. Elliott, deceased, who departed this life

intestate, seised of a valuable estate in the county of Wood-ford, which descended to them. That in her life time, in the year 1813, James Elliott, her husband, caused a deed to be made and recorded, purporting to be executed by the said Sarah G. and himself, for the purpose of conveying the said land to Benjamin Elliott, who immediately re-conveyed the same to the said James Elliott. The complainants allege, that this deed was never properly executed by their ancestor; that she was induced by the said James to believe, that it conveyed only an estate for her life; that she was prevailed on under this belief to accompany him to the clerk's office, where she acknowledged the said deed without any privy examina-tion, which is required by law. The deed was recorded on her acknowledgement without any certificate of privy examin-ation. The said Sarah G. departed this life in the year 182 , soon after which her heirs brought an ejectment in the circuit court for the recovery of the land. While it was depending, in November 1823, the said James Elliott, having failed in an attempt to induce the clerk to alter the record, prevailed on the county court of Woodford, on the motion of Benjamin Elliott, to make the following order.

"Woodford county, sct.—November county court, 1823.

"On motion of Benjamin Elliott, by his attorney, and it appearing to the satisfaction of the court by the indorsement on the deed from James Elliott and wife to him, under date of the 12th of June 1813, and by parol proof that the said deed was acknowledged in due form of law by Sarah Elliott, before the clerk of this court, on the 11th day of September 1813, but that the certificate thereof was defectively made out, it is ordered that the said certificate be amended to conform to the provi-sions of the law in such cases, and that said deed and certifi-cate, as amended, be again recorded; whereupon the said cer-tificate was directed to be amended to read in the words and figures following, to wit:

"Woodford county, sct.—September 11, 1813.

"This day the within named James Elliott, and Sarah his wife, appeared before me, the clerk of the court for the county afore-said, and acknowledged the within indenture to be their act and deed; and the said Sarah being first examined privily and apart from her said husband, did declare that she freely and

willingly sealed and delivered said writing, which was then shown and explained to her by me, and wished not to retract it, but consented that it should be recorded." The said deed, order of court, and certificate, as directed to be amended, is all duly recorded in my office.

Teste,                JOHN MCKINNEY, JR., C. W. C. C.

Indorsements on the back of the foregoing deed, to wit:—James Elliott et ux. to Benjamin Elliott—Deed.

Acknowledged by James Elliott and Sarah G. Elliott, September 11, 1813.

Att.                    J. MCKINNEY, JR., C. W. C.

R. B. F. page 199.    Recorded deed-book K, page 56, 57.

Att.                        C. H. Mc., D. Clk.

The said James Elliott departed this life during the pendency of the ejectment: it was revived against James Elliott, his son, as terre tenant, and determined in favour of the plaintiffs in November 1823. The bill, which was filed during the term at which the judgment in ejectment was rendered, alleges that the defendants retain possession of the premises by themselves and their tenants, who are doing great waste by cutting and destroying the timber, and who threaten to continue their possession by suing out a writ of error to the judgment of the court. It charges that the defendants are receiving the rents, which some of them will be unable to repay; prays for an injunction to stay waste; that a receiver may be appointed; that the rents, from the death of Sarah G. Elliott, may be accounted for; that the deed may be surrendered up to be cancelled; and for further relief.

The injunction was awarded.

The writ of error to the judgment of the circuit court came on to be heard in this court at January term 1828, 1 Peters, 328, when the judgment was affirmed; this court being of opinion that the deed from James Elliott and Sarah G. his wife, was totally incompetent to convey the title of the said Sarah G. to the tract of land therein mentioned.

In November 1828, the defendants filed their answer, in which they claim the land in controversy as heirs of James Elliott, deceased. They insist that the deed from James Elliott and Sarah G. his wife, recorded in the court of Woodford county, was fairly and legally executed, and conveyed the

land it purports to convey. That Sarah G. Elliott was privily examined according to law, and that the omission to record her privy examination was the error of the clerk, which was afterwards corrected by order of the court, so as to conform to the truth of the case. They deny that the deed from Sarah G. Elliott was obtained by any misrepresentation; and say, they have heard that the judgment of the circuit court has been affirmed in the supreme court, and that they have not determined to prosecute any other suit, but hope they will be left free on that subject.

In May term 1829, the cause came on to be heard, when the bill of the plaintiffs was dismissed with costs. They appeal from the decree to this court.

The principal object of the bill was to quiet the title by removing the cloud hanging over it, in consequence of the outstanding deed executed by James Elliott and Sarah G. his wife. This application is resisted in the argument, upon the principle, that the deed, having been declared by this court to be void on its face, can do no injury to the plaintiffs; who ought not therefore to be countenanced by a court of equity in an application to obtain the surrender of a paper from which they can have nothing to apprehend; by which application the defendants are exposed, without reasonable cause, to unnecessary expense. That under such circumstances a court of equity can have no jurisdiction over the cause.

The court is well satisfied that this would be a proper case for a decree according to the prayer of the bill, if the defectiveness of the conveyance was not apparent on its face, but was to be proved by extrinsic testimony. The doubt respecting the propriety of the interference of a court of equity, is produced by the facts that the deed is void upon its face; and has been declared to be void by this court. It is therefore an unimportant paper, which cannot avail its possessor. The question whether a court of equity ought, in any case, to decree the possessor of such a paper to surrender it, is involved in considerable doubt; and is one on which the chancellors of England seem to have entertained different opinions. Lord Thurlow was rather opposed to the exercise of this jurisdiction, 3 Bro. Ch. Rep. 15, 18; and Lord Loughborough appears to have concurred with him, 3 Ves. 368; and in Gray v. Matthias, 5 Ves. 286, the

court of exchequer refused to decree, that a bond which was void upon its face should be delivered up; principally on account of the expense of such a remedy in equity, when the defence at law was unquestionable. In this case Chief Baron M'Donald said, that the defendant should have demurred to the action upon that bond. Instead of that, he comes here professing that it is a piece of waste paper. He goes through a whole course of equitable litigation, at the expense of two or three hundred pounds. In such a case, though equity may have concurrent jurisdiction, it is not fit in the particular case that equity should entertain the bill.

Lord Eldon inclined to favour the jurisdiction, 7 Ves. 3; 13 Ves. 581. He thought the power to make vexatious demands upon an instrument, s often as the purpose of vexation may urge the party to make them, furnished a reason for decreeing its surrender.

In 1 Johnson's Ch. Reports, 517, Chancellor Kent concludes a very able review of the cases on this subject with observing, "I am inclined to think, that the weight of authority, and the reason of the thing, are equally in favour of the jurisdiction of the court, whether the instrument is or is not void at law, and whether it be void from matter appearing on its face, or from proof taken in the cause, and that these assumed distinctions are not well founded."

The opinion of this learned chancellor is greatly respected by this court. He modifies it in some degree by afterwards saying, "but, while I assert the authority of the court to sustain such bills, I am not to be understood as encouraging applications where the fitness of the exercise of the power of the court is not pretty strongly displayed. Perhaps the cases may all be reconciled on the general principle, that the exercise of this power is to be regulated by sound discretion, a the circumstances of the individual case may dictate; and that the resort to equity, to be sustained, must be expedient, either because the instrument is liable to abuse from its negotiable nature; or because the defence not arising on its face, may be difficult or uncertain at law, or from some other special circumstance peculiar to the case, and rendering a resort here highly proper, and clear of all suspicion of any design to promote expense or litigation. If, however, the defect appears

on the bond itself, the interference of this court will still depend on a question of expediency, and not on a question of jurisdiction."

The court forbears to analyse and compare the various decisions which have been made on this subject in England; because, after considering them, much contrariety of opinion still prevails, both on the general question of jurisdiction, where the instrument is void at law on its face, and on the expediency in this particular case of granting a perpetual injunction, or decreeing the deed to be delivered up and cancelled; and because we think that, although the prayer of the bill be rejected, the decree of dismission ought to be modified.

The defendants, in their answer, insist upon their title both at law and in equity, and on being left free to assert that title, if they shall choose so to do: a general dismission of the bill with costs, the court assigning no reason for that dismission, may be considered as a decree affirming the principles asserted in the answer; as leaving the defendants at full liberty to assert their title in another ejectment, and as giving some countenance to that title.

We also think that the bill ought not to have been dismissed with costs. In addition to the fact that the controversy respecting the title was not abandoned by the defendants, a fact which is entitled to some influence on the question of costs, other considerations bear on this point. The bill prays that the defendants might be enjoined from committing waste whilst they retained possession of the premises; that a receiver might be appointed, and that an account of rents might be taken. These are proper objects of equity jurisdiction. If they had been accomplished when the decree was pronounced, the bill might have been dismissed, but not so far as is disclosed by the record, with costs. The defendants were not, we think, entitled to costs. We are therefore of opinion that the decree of the circuit court ought to be so modified as to express the principles on which the bill of the plaintiffs is to be dismissed, and ought to be reversed as respects costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district

[Peirsoll v. Elliott.]

of Kentucky, and was argued by counsel; on consideration whereof, this Court is of opinion that the decree of the circuit court ought to have shown that the bill was dismissed, because the deed therein mentioned being void at law for matter apparent on its face, the plaintiff had not shown any circumstances which disclosed a case proper for the interference of a court of equity to relieve against such void deed.   And this court is further of opinion, that so much of the said decree as dismisses the bill with costs is erroneous and ought to be reversed.   This court doth therefore reverse and annul the said decree, and direct that the case be remanded to the said circuit court with directions to modify the same according to the principles of this decree; and the parties are to bear their own costs in this Court.