## FROST *v.* SPITLEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Argued April 19, 20, 1887. — Decided May 2, 1887.

A bill in equity to quiet title cannot be maintained, either under the general jurisdiction in equity, or under the statute of Nebraska of 1873, by one having an equitable title only.

THIS case, so far as is material to the understanding of the appeal, was a bill in equity by Martin Spitley, a citizen of Illinois, against George W. Frost and wife, citizens of Ne-

braska, Thomas C. Durant, a citizen of New York, and The Credit Mobilier of America, a corporation of Pennsylvania, alleging that the plaintiff was entitled to two lots of land in the city of Omaha, county of Douglas, and State of Nebraska, under a sale on execution against Frost to one John I. Redick, and a conveyance from Redick to the plaintiff, and praying for a decree quieting the plaintiff's title and ordering a conveyance to him of the legal estate. Frost and wife, by answer and cross bill, denied the validity of the sale on execution, and claimed the land as a homestead. After the completion of the pleadings between Spitley and Frost and wife, the case was referred to a master, whose report was confirmed by the Circuit Court, and a final decree was entered for Spitley on his bill against Frost and wife, their cross bill was dismissed, and they appealed to this court. Durant and the Credit Mobilier were not served with process, the record did not show publication of the notice ordered to them upon either bill, they did not appear in the cause, no decree was rendered against them, and they were not made parties to the appeal.

The material facts, as appearing by the admissions in the pleadings, the master's report, and the evidence taken in the case, were as follows:

Prior to 1866, the Credit Mobilier, in whose employ Frost was, purchased the land in question, took the title in the name of Durant, its president, and built a house upon it for the use of Frost and his family, under an agreement between the corporation and Frost, by which the title was to be conveyed to him upon a final settlement between them. Frost and his family forthwith took possession of the land, and thenceforth occupied it as a homestead, and were in possession when this bill was filed.

On November 11, 1870, Redick, who was an attorney, and Frost made and signed the following agreement: "In consideration of $2500 as attorney's fees, I agree with Hon. G. W. Frost that I will bring suit and procure, through the courts or otherwise, to him a good title to the premises he, said Frost, now occupies as his residence in the city of Omaha; and in

case [of] any settlement or arrangement of the suit, then said Frost is to pay in proportion only; and in case said Frost fails to procure said title at all, then the said attorney is to have a mere nominal fee for his services, to wit, $100."

Redick accordingly, on April 29, 1871, brought a suit in equity on behalf of Frost against the Credit Mobilier and Durant in the courts of Nebraska, and in that suit on March 27, 1876, obtained a decree that upon Frost's paying to said defendants within thirty days the sum of $302.71 remaining due from him to them, they should convey the land to him. That sum was not paid within the time fixed, Frost contending that Redick, by the agreement between them, was bound to pay it. On November 11, 1876, said defendants executed a quitclaim deed to Frost, but it was never delivered to him or recorded. Durant afterwards brought an action of ejectment for the land against Frost, which was pending until June 8, 1880, when Redick, having been made a defendant therein on the ground of his having succeeded to Frost's rights in the property under the proceedings stated below, paid that sum, with interest, and the action of ejectment was thereupon dismissed.

On June 26, 1877, Redick brought an action at law to recover his fee of $2500 against Frost in the Circuit Court of the United States for the District of Nebraska, in which, on July 30, 1877, he obtained a writ of attachment, on which this land was attached, and was appraised at $6000; on March 14, 1878, recovered judgment; and on July 1, 1878, obtained an order of sale as upon execution, on which this land was appraised, "after deducting all prior liens thereon," at $500, the appraisers adding, "The said defendant's only interest in said property, as appears by the records of Douglas County, Neb., being that of occupancy and possession, we appraise the said interest as above;" and the marshal, on August 24, 1878, after thirty days' advertisement of "the property described in this order," sold by auction Frost's interest in these lots to Redick for $350. Frost's solicitor, at the time of the sale, gave notice to the marshal that Frost claimed the land as his homestead, and afterwards moved the court to set aside

the sale for this and other reasons. But the court, upon a hearing, confirmed the sale, and directed the marshal to execute and deliver to Redick a deed in the usual form, which was accordingly done; and Redick, on September 8, 1880, conveyed to Spitley, the present appellee.

*Mr. John L. Webster* for appellants.

No appearance for appellee.

· Mr. Justice Gray, after stating the case as above reported, delivered the opinion of the court.

The opinion of the Circuit Court proceeded upon the grounds that Frost's homestead right, as against the contract made by him with Redick in 1870, and the judgment and execution afterwards obtained by Redick on that contract, was governed by the homestead act of Nebraska of 1866, by which no consent of the wife to an alienation of the homestead was required; and that the sale on execution, confirmed by the court, cut off the right of homestead. 5 McCrary, 43. But it is unnecessary to consider the validity of either of those grounds, because, even if they are well taken, Spitley's bill cannot be maintained.

At the time of the sale on execution of Frost's interest in the land, the legal title was, and it still remains, in Durant. Although Frost, under his agreement with Durant and the corporation, and the decree which he had recovered against them, had been entitled to a deed of the land upon the payment of a certain sum of money, he had not paid the money, nor had any deed been delivered to him; so that his title, either by virtue of the agreement and decree, or by virtue of his occupation of the land as a homestead, never was anything more than an equitable title. The sale on execution against him (if valid and effectual) and the deed of the marshal passed only his equitable title to Redick; Redick's payment to Durant of the money unpaid by Frost did not divest Durant of his legal title; and Redick's subsequent conveyance to Spitley could pass no greater right than Redick had. Spitley's

title, therefore, at best, is but equitable, and not legal; and Frost, and not Spitley, is in actual possession of the land.

Under the jurisdiction and practice in equity, independently of statute, the object of a bill to remove a cloud upon title, and to quiet the possession of real estate, is to protect the owner of the legal title from being disturbed in his possession, or harassed by suits in regard to that title; and the bill cannot be maintained without clear proof of both possession and legal title in the plaintiff. *Alexander* v. *Pendleton*, 8 Cranch, 462; *Piersoll* v. *Elliott*, 6 Pet. 95; *Orton* v. *Smith*, 18 How. 263; *Crews* v. *Burcham*, 1 Black, 352; *Ward* v. *Chamberlain*, 2 Black, 430. As observed by Mr. Justice Grier in *Orton* v. *Smith*, " Those only who have a clear legal and equitable title to land, connected with possession, have any right to claim the interference of a court of equity to give them peace or dissipate a cloud on the title." 18 How. 265. A person out of possession cannot maintain such a bill, whether his title is legal or equitable; for if his title is legal, his remedy at law, by action of ejectment, is plain, adequate and complete; and if his title is equitable, he must acquire the legal title, and then bring ejectment. *United States* v. *Wilson*, 118 U. S. 86; *Fussell* v. *Gregg*, 113 U. S. 550.

It is possible that one who holds land under grant from the United States, who has done everything in his power to entitle him to a patent, ( which he cannot compel the United States to issue to him, ) and is deemed the legal owner, so far as to render the land taxable to him by the state in which it lies, may be considered as having sufficient title to sustain a bill in equity to quiet his right and possession. *Carroll* v. *Safford*, 3 How. 441, 463; *Van Wyck* v. *Knevals*, 106 U. S. 360, 370; *Van Brocklin* v. *Tennessee*, 117 U. S. 151, 169. But no such case is presented by the record before us.

In *Stark* v. *Starrs*, 6 Wall. 402, the suit was founded on a statute of Oregon, authorizing "any person in possession" to bring the suit; the court, after observing that "his possession must be accompanied with a claim of right, legal or equitable," held that the plaintiff proved neither legal nor equitable title; and consequently the question whether an equitable title only

would have been sufficient to maintain the suit was not adjudged. In *Reynolds v. Crawfordsville Bank*, 112 U. S. 405, the decision was based upon a statute of Indiana, under which, as construed by the Supreme Court of that state, an equitable title was sufficient, either to support or to defeat the suit. *Jefferson Railroad* v. *Oyler*, 60 Indiana, 383; *Burt* v. *Bowles*, 69 Indiana, 1. See also *Grissom* v. *Moore*, 106 Indiana, 296.

A statute of Nebraska authorizes an action to be brought "by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons who claim an adverse estate or interest therein, for the purpose of determining such estate or interest, and quieting the title to said real estate." Nebraska Stat. February 24, 1873, Rev. Stat. 1873, p. 882. By reason of that statute, a bill in equity to quiet title may be maintained in the Circuit Court of the United States for the District of Nebraska by a person not in possession, if the controversy is one in which a court of equity alone can afford the relief prayed for. *Holland* v. *Challen*, 110 U. S. 15, 25. The requisite of the plaintiff's possession is thus dispensed with, but not the other rules which govern the jurisdiction of courts of equity over such bills. Under that statute, as under the general jurisdiction in equity, it is "the title," that is to say, the legal title, to real estate, that is to be quieted against claims of adverse estates or interests. In *State* v. *Sioux City & Pacific Railroad*, the Supreme Court of Nebraska said, "Whatever the rule may be as to a party in actual possession, it is clear that a party not in possession must possess the legal title, in order to maintain the action." 7 Nebraska, 357, 376. And in *Holland* v. *Challen*, above cited, this court said, "Undoubtedly, as a foundation for the relief sought, the plaintiff must show that he has a legal title to the premises."

The necessary conclusion is, that Spitley, not having the legal title of the lots in question, cannot maintain his bill for the purpose of removing a cloud on the title; he cannot maintain it for the purpose of compelling a conveyance of the legal title, because Durant, in whom that title is vested, though named as a defendant, has not been served with process or

appeared in the cause; and for like reasons Frost and wife cannot maintain their cross bill.

> *Decree reversed, and case remanded to the Circuit Court, with directions to dismiss the appellee's bill, and the appellants' cross bill, without prejudice, the appellee to pay the costs in this court and in the Circuit Court.*