(February 28, 1906.)

B. H. COLEMAN et al., Respondents, v. L. A. JAGGERS, Appellant.

[85 Pac. 894.]

ACTION TO DETERMINE ADVERSE CLAIM — TITLE TO REAL ESTATE—SEPARATE PROPERTY OF WIFE—EXEMPTIONS—EXECUTION SALE.

1. Under the provisions of section 4538 of the Revised Statutes, an action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claim.

2. Under the jurisdiction and practice in equity, independent of statute, a bill to quiet title cannot be maintained unless the possession and legal title are in the complainant, but that rule of equity practice has been greatly modified by the provisions of section 4538 in this state, and an action may be maintained although the plaintiff have neither the possession nor the legal title thereto.

3. Under the provisions of said section 4538, a suit may be brought by anyone claiming some right or interest in land to determine any adverse claim thereto.

4. By the provisions of section 1, article 5 of the constitution of Idaho, the distinction between actions at law and suits in equity and the forms of all such actions and suits are prohibited, and there is but one form of action in this state for the enforcement or protection of private rights or the redress of private wrongs.

5. By the provisions of section 20, article 5 of the constitution, the district court is given original jurisdiction in all cases both at law and in equity, as well as certain appellate jurisdiction.

6. Under the provisions of section 4168 of the Revised Statutes, the complaint is only required to contain the title of the court and cause, a statement of the facts constituting the cause of action in ordinary and concise language, and the demand for relief, and the district court is authorized to grant such relief, whether in equity or at law, as the parties are entitled to under their allegations and proof.

7. Under the provisions of our constitution and statute, the district court has equitable jurisdiction, and is authorized to exercise it in all cases where the remedy at law is not adequate, complete and certain so as to meet all the requirements of justice in the case.

8. *Held*, under the evidence in this case that the trial court was justified in finding that the premises in dispute were not the separate property of the appellant.

(Syllabus by the court.)

APPEAL from the District Court of the Third Judicial District for Boise County. Hon. George H. Stewart, Judge.

Action to determine adverse claim to real property. Judgment for the plaintiffs. *Affirmed.*

H. L. Fisher, for Appellant.

An action to quiet title cannot be maintained against the holder of the legal title by the holder of an equitable title. (*Von Drachenfels v. Doolittle*, 77 Cal. 295, 19 Pac. 518;

*Nidever v. Ayers,* 83 Cal. 39, 23 Pac. 192; *Harrigann v. Mowry,* 84 Cal. 458, 22 Pac. 658, 24 Pac. 48; *Brewer v Houston,* 58 Cal. 345; *Shanahan v. Crampton,* 92 Cal. 13, 28 Pac. 50; *Learned v. Welton,* 40 Cal. 349; *Chase v. Cameron,* 133 Cal. 231, 65 Pac. 460; *City and County of San Francisco v. Ellis,* 54 Cal. 72, 65 Pac. 460; *Castro v. Barry,* 79 Cal. 448, 21 Pac. 946; *Frost v. Spitley,* 121 U. S. 552, 30 L. ed. 1010, 7 Sup. Ct. Rep. 1129; *Moores v. Townshend,* 102 N. Y. 387, 7 N. E. 401.)

As against a stranger to the judgment, plaintiff must show that defendant had title. (*Reilly v. Wright,* 117 Cal. 80, 48 Pac. 970.)

An estate cannot be conveyed on an execution sale on a judgment, in an action to which the wife was not a party. (*Svetinich v. Sheean,* 124 Cal. 216, 71 Am. St. Rep. 50, 56 Pac. 1028.)

Karl Paine, for Respondents.

Section 4538 of the Revised Statutes authorizes an action to be maintained to determine any adverse claim. (*Shields v. Johnson,* 10 Idaho, 454, 79 Pac. 393; *Johnson v. Hurst,* 10 Idaho, 308, 77 Pac. 784; *Fry v. Summers,* 4 Idaho, 424, 39 Pac. 1118.)

The foregoing decisions of this court have interpreted section 4538 to mean that every estate or interest known to the law, whether legal or equitable, may be determined and adjudicated in an action of this kind.

The action (to quiet title) has been greatly extended by statute, and in many states is the ordinary mode of trying disputed titles. (3 Pomeroy's Equity Jurisprudence, sec. 1395.)

The borrowed money with which the hotel was purchased was community property. (*Northwestern etc. Bank v. Rauch,* 7 Idaho, 153, 154, 61 Pac. 516; *Schuyler v. Broughton,* 70 Cal. 282, 11 Pac. 719.)

The common property of the marital community might be sold upon execution for the debts of the husband. (*Law v. Spence,* 5 Idaho, 251, 48 Pac. 282.)

SULLIVAN, J.—This action was brought by the respondents to quiet the title to certain premises situated in Centerville, Boise county. The action was originally brought against Joseph A. Jaggers and L. A. Jaggers, husband and wife, and H. C. Granger and Belle Granger, husband and wife. It appears from the record that Joseph Jaggers and H. C. Granger were engaged in the saloon business in Center-ville and became indebted to the respondents; that respondents recovered judgment against them, and the premises in controversy were sold at sheriff's sale and purchased by the respondents; they thereafter procured a sheriff's deed to said premises, and base their claim of ownership on said sheriff's deed. Granger and his wife and Joseph Jaggers filed a disclaimer in this suit, and Mrs. Jaggers filed her separate answer denying the allegations of the complaint as to the ownership of said premises by the respondents and their right to the possession thereof. She averred that she was the owner and entitled to the possession of the premises, having paid the entire purchase price therefor out of her separate means and property, and that the same was acquired by her as her separate property and estate, and that she had never conveyed the same to anyone. The cause was tried by the court without a jury and judgment entered in favor of the respondents. The first five errors assigned were considered on the argument of this case together. It is contended by counsel for appellant that the undisputed evidence shows that neither the respondents nor the judgment debtors through whom they claim ever had the legal title to the premises in question, and that the legal title now stands in the appellant; that being true, it is contended that an action to quiet title cannot be maintained against the holder of the legal title by the holder of the equitable title. In support of that contention counsel cites the following authorities:

*Von Drachenfels v. Doolittle,* 77 Cal. 295, 9 Pac. 518; *Nidever v. Ayers,* 83 Cal. 39, 23 Pac. 192; *Harrigann v. Mowry,* 84 Cal. 458, 22 Pac. 658, 24 Pac. 48; *Shanahan v. Crampton,* 92 Cal. 13, 28 Pac. 50; *Chase v. Cameron,* 133 Cal. 231, 65 Pac. 460; *Castro v. Barry,* 79 Cal. 448, 21 Pac. 946; *Frost v. Spitley,* 121 U. S. 552, 30 L. ed. 1010, 7 Sup. Ct. Rep. 1129; *Moores v. Townshend,* 102 N. Y. 387, 7 N. E. 401. The case of *Drachenfels v. Doolittle, supra,* was decided by the supreme court of California in 1888, and it is there held that an action to quiet title cannot be maintained by the owner of an equitable interest as against the holder of the legal title, and cites in support of that proposition only one case—that of *Frost v. Spitley,* 121 U. S. 552, 30 L. ed. 1010, 7 Sup. Ct. Rep. 1129.

The California court seems to have held strictly to the general principles of equity jurisprudence as administered by the chancery courts of England, regardless of the provisions of section 738 of the Code of Civil Procedure of that state. That section is identically the same as section 4538 of the Revised Statutes, and is as follows: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

In *Tuffree v. Polhemus,* 108 Cal. 670, 41 Pac. 806, the court apparently took a little broader view of the provisions of that section than it had in some previous cases and said: "But as this court in the past has had occasion to remark, section 738 of the Code of Civil Procedure is broad in its terms; it possesses no limitations or restrictions; and we see no reason why it does not vest in the holder of an equitable title the right to come before the court and have their equities declared superior to any and all opposing equities." The court also said: "There are cases in this state holding that the possessor of an equitable title cannot bring an action to quiet such title against the holder of the legal title," and cites in support of that proposition the authorities above cited. Under the jurisdiction and practice in equity, both in English and in the

courts of the United States, independent of any statute, a bill to quiet title cannot be maintained without clear proof of both possession and legal title in the complainant, hence one holding the equitable title could not sustain an action against one holding the legal.

In *Frost v. Spitley, supra,* which was an appeal from the United States circuit court of the district of Nebraska, the statute of that state authorized an action to quiet title to be brought by any person or persons whether in actual possession or not, and in that case the supreme court of the United States held that the requisite of the plaintiff's possession was dispensed with by statute. That statute, however, did not dispense with the requisite, that the plaintiff must have the legal title, as required by the ancient equity jurisdiction and practice in such cases. That is the only case cited in support of the rule laid down in *Drachenfels v. Doolittle, supra,* which case seems to be the leading case in California, and there the supreme court of the United States recognizes the fact that the general jurisdiction of the courts of equity in regard to such actions has been changed in many of the states by statute. Independent of statute, the equity jurisdiction to quiet title was intended to protect the legal owner of such title from being harassed by suits in regard to the title, and originally such equity jurisdiction could be invoked only by a plaintiff in possession holding the legal title. Such suits have been extended by statute; in many states it is the ordinary mode of trying a disputed title, and suits under such statutes are not now particularly designated as proceedings to quiet title, but are known and designated as proceedings for the determination of adverse claims.

In volume 6, section 735 of Pomroy's Equity Juisprudence, third edition, the author there says: "The statutory action to determine an adverse claim is an improvement upon the old bill of peace. The statute enlarges the class of cases in which equitable relief could formerly be sought in the quieting of title. It is not necessary, as formerly, that the plaintiff should first establish his right by an action at law. He can immediately, upon knowledge of such claim, require the

nature and character of the adverse estate or interest to be produced, exposed and judicially determined, and the question of title be thus forever quieted."

In section 738, Id., the author says: "As a general rule, the suit may be brought by anyone claiming some right or interest in the land. In most of the states the owner of an equitable interest, as well as the owner of the legal title, may maintain the suit to determine adverse claims." In jurisdictions where courts of equity and courts of law are separate and distinct, and where the equity jurisdiction to quiet title was intended to protect the legal owner of the title from being harassed in regard to such title, the equitable owner could not maintain an action against the one holding the legal title, and in such jurisdiction the one holding the equitable title is required to go into a court of law first to establish his rights, as equity had no jurisdiction of the case for the reason that the *law courts* concern the legal title only, and that the plaintiffs had a plain, adequate and complete remedy at law. But this method of protecting a person's rights was found very cumbersome and vexatious, as in some cases several suits had to be brought before the party could obtain all of his rights. The inability of a court of law to afford adequate relief was the strong argument in favor of extending the jurisdiction of a court of equity in this class of cases. This feature of the matter is commented upon in *Wehrman v. Conklin,* 155 U. S. 314, 39 L. ed. 167, 15 Sup. Ct. Rep. 129. A statute of the state of Iowa was involved in that case, which statute enlarged the jurisdiction of courts of equity in three particulars at least: (1) It did not require the plaintiff to have been annoyed or threatened by repeated acts of ejectment. (2) It dispensed with the necessity of his title having been previously established in an action at law. (3) The suit might be brought by a party having the equitable title, as well as a party having the legal title. Statutes thus enlarging the jurisdiction of courts of equity have been held to be constitutional. (*Wehrman v. Conklin, supra.*)

By the provisions of section 1, article 5 of the constitution of Idaho, the distinction between actions at law and suits in

equity and the forms of all such actions and suits are pro-
hibited, and we have but one form of action in this state for
the enforcement or protection of private rights or the redress
of private wrongs, and by the provisions of section 20 of said
article, the district court is given original jurisdiction in all
cases both at law and in equity as well as certain appellate
jurisdiction, and under the provisions of section 4168 of the
Revised Statutes, the complaint in each and every case be-
sides the title of action, etc., is only required to contain a
statement of the facts constituting the cause of action in or-
dinary and concise language and demand for relief.  Thus
many of the rules of pleading in other jurisdictions in both
suits in equity and actions at law have been greatly modified
and changed.  The provisions of said section 4538 of the
Revised Statutes above quoted are very broad, and under them
any person, whether in possession or out of the possession,
whether holding the legal title or equitable title or what not,
may bring his action against another who claims an estate in
real property adverse to him, and may in such action have the
adverse claim determined and settled.

Under our constitution and statutes equitable jurisdiction
exists and will be exercised in all cases and under all circum-
stances where the remedy at law is not adequate, complete
and certain, so as to meet all the requirements of justice.
That there is a legal remedy is not sufficient.  Such remedy,
in order to oust or prevent the equitable jurisdiction, must
be in all respects as satisfactory as the relief furnished by a
court of equity.  (1 Pomeroy's Equity Jurisprudence, 3d ed.,
sec. 297.)  In the case at bar, if the plaintiffs were required
to bring an action at law in ejectment or otherwise, and their
right to the possession of the premises in dispute should be
adjudged in their favor, then in order to clear their title they
would have to bring a suit in equity to annul the legal title
held by the appellant.  Thus it is shown that an action at law
would not be adequate, complete and certain, and meet all the
requirements of justice.

One of the objects of our practice act and the provisions
of our state constitution in abolishing all distinctions between

actions at law and suits in equity, and giving our district
courts full and complete jurisdiction both at law and in equity,
was to rid our system of a multiplicity of suits and a vexatious
and cumbersome procedure, and to give litigants full and
complete relief in a single action, where under the old prac-
tice several suits were necessary to accomplish that result.
And in the case at bar there is no good reason why the title
may not be fully settled and determined between the parties.
The provisions of section 4538 of the Revised Statutes, and
the decisions of this court in *Shields v. Johnson,* 10 Idaho,
476, 79 Pac. 393, *Johnson v. Hurst,* 10 Idaho, 308, 77 Pac.
791, *Fry v. Summers,* 4 Idaho, 424, 39 Pac. 1118, settle this
contention, for under them we think every estate or interest
known to the law in real property, whether legal or equitable,
may be determined in an action of this kind.·

The other errors assigned may be considered under the
general head of the insufficiency of the evidence to sustain
the decision. While the testimony of the appellant shows
that she paid for the premises in question with money bor-
rowed by her husband for her which he repaid to the persons
from whom it was borrowed, there is sufficient evidence in the
record to throw decided suspicions upon that evidence and its
utter inconsistency; instead of taking the deed in her own
name, she took the deed from the grantor in the name of her-
self and a Mrs. Granger, whose husband was the partner of
Jaggers in the saloon business. Her explanation of that fact
is very lame. While Granger himself testified that at the
time of the said purchase Jaggers and himself were running
a saloon. They were paying $16 a month rent and were not
doing a very large business, and Granger proposed to Jaggers
that they buy the hotel building in question, and Jaggers re-
plied that he had been thinking about that, and it was there
arranged that Jaggers should negotiate for said premises. A
few days after that conversation Jaggers informed Granger
that he had purchased the premises. Granger asked him if
he had money sufficient to pay for it. He replied that he had
sufficient; that he had a check for something over $70, and
that he had sufficient. Granger replied that if he hadn't, he

had a little at their home which he would let him have. Jaggers thereupon asked Granger if they hadn't better have it deeded to their wives, and Granger replied that it did not matter to him. Granger further testified that his understanding was that he owned half of the premises, and that he thereafter sold it to Jaggers after they had dissolved partnership in the saloon business; that in their agreement Jaggers agreed to settle all bills owing by the partnership and was to take the property and continue the business. This partnership was dissolved a few days after the purchase of the said building, and the partnership was indebted at that time in the sum of about $200; that shortly before the trial of this cause, at the request of the appellant's attorney, Granger and his wife conveyed by quitclaim deed whatever title they held in said premises to Mr. Jaggers, and Jaggers thereafter conveyed it to his wife, the appellant.

The trial court having seen the witnesses on the stand, observed their demeanor and heard them testify, is better qualified to judge of the weight to be given to the testimony of each than this court. That court evidently concluded that said premises were not the separate property of the appellant, and we think that the evidence was sufficient to sustain the judgment. The judgment is therefore affirmed, with costs in favor of respondents.

Stockslager, C. J., concurs.

AILSHIE, J., Concurring.—I concur with my associates in the conclusion reached as to the legal propositions involved in this case. As to the sufficiency of the evidence, however, to support the findings and judgment, I have considerable doubt. While there was some evidence supporting the judgment, it was principally hearsay, and incompetent as against Mrs. Jaggers, the only defendant in this case. The best that can be said for the evidence in the case is that it was desultory and highly circumstantial; rather below the standard of certainty that should be required before taking from a married woman the fruits of her daily labor.