(January 22, 1916.)

# H. P. CARROLL and RALPH WARD, Respondents, v. HARTFORD FIRE INSURANCE COMPANY, a Corporation, Appellant.

## [154 Pac. 985.]

LEGAL AND EQUITABLE CAUSES OF ACTION—MOTION TO SEPARATE IN COMPLAINT—FIRE INSURANCE POLICY—MISTAKE OF AGENT IN REDUCING CONTRACT TO WRITING—ESTOPPEL—STATUTORY FORM OF POLICY—RIGHTS OF PARTIES UNDER—FALSELY SWEARING TO PROOFS OF LOSS—INSTRUCTIONS—SUBROGATION.

1. By sec. 1, art. 5, of the constitution of this state, the distinction between actions of law and suits in equity is prohibited. Both legal and equitable causes of action may be joined in the same complaint. These causes of action need not be separately set forth, provided that a concise and complete statement of them is made, and when that is done the plaintiff is entitled to any relief at law or in equity that his proof under such allegations may show him to be entitled to.

2. Where it is alleged in the complaint and shown by the proof that an insurance policy as written by the agent of the insurance company does not truly state the contract of insurance as actually made between the parties, or the facts upon which such contract was based, a court of general jurisdiction in this state may reform such contract, so as to make it express the intention of the parties, and enforce it, as so reformed, in one action.

3. Sec. 13 of an insurance act, passed in 1913 (Sess. L. 1913, p. 593), one of the objects of which was to provide a standard form

As to effect of mortgage or instrument given as security as breach of condition as to sole and unconditional ownership, see note in 7 L. R. A., N. S., 627; L. R. A. 1915D, 812.

On reformation of insurance policy for mistake of soliciting agent, see note in 11 L. R. A., N. S., 357.

On right of insurer to subrogation to mortgage on payment of mortgage debt from proceeds of insurance on mortgagee's interest, see note in 3 L. R. A., N. S., 79.

As to effect of agent's insertion in the application of false answers to questions correctly answered by the insured, see note in Ann. Cas. 1915A, 273.

of fire insurance policy in this state, in accordance with the "New York Standard," was not intended by the legislature to abridge any contractual rights which an applicant for fire insurance would have had prior to its enactment, or to confer upon insurance companies any immunity for the negligence of their agents in incorrectly reducing an insurance contract to writing.

4. Where a fire insurance policy contains a clause that it shall be void if the interest of the insured be not truly stated therein, or "if the interest of the insured be other than unconditional and sole ownership," and the insured truly stated his interest as that of chattel mortgagee to the agent when applying for the insurance, but the policy as written by the agent disclosed no interest in the insured other than sole ownership, and the company thereafter accepted the policy and the payment of premiums thereon, the knowledge of the agent was the knowledge of the company, and in case of loss and suit to recover on the policy, the insurance company will not be permitted to set up the defense that the policy was made void by the violation of said conditions.

[As to parol evidence to explain or modify fire insurance contract, see note in Ann. Cas. 1914C, 59.]

5. Under our statute (Sess. L. 1913, p. 597), an essential element of the offense of falsely swearing to a proof of loss on an insurance policy is the intent to defraud, and unless such intent is shown, the fact that the insured incorrectly stated in the proof of loss his interest in the property destroyed is no defense to an action on a policy which by its conditions is to be void in case of any fraud or false swearing by the insured.

6. Where a fire insurance policy was issued on 250,000 feet of lumber in a lumber-yard, which contained a greater quantity of lumber than the amount insured, and in an action to recover on the policy the court incorrectly instructed the jury that in arriving at the amount of loss under the policy they should "determine the same by ascertaining the cash value of the lumber in the mill-yard" instead of the cash value of the actual amount destroyed, but the proof showed that in fact more than 250,000 feet was destroyed and that only 4,020 feet was left in the yard, *held,* that under the evidence such incorrect instruction was not reversible error, as the jury manifestly was not prejudicially misled thereby.

7. *Held,* that the instructions given, on the whole, fairly state the law applicable to the facts of this case, and that the court committed no error in the refusal to give instructions requested by defendant.

8. Where a chattel mortgagee insured his interest in a part of the property mortgaged, which was afterward destroyed by fire, and

recovers judgment for the full amount of his policy, the insurance company cannot be subrogated to his security as such mortgagee without first paying to him the remainder of the indebtedness for which the mortgage was given.

'APPEAL from the District Court of the Eighth Judicial District for Kootenai County. Hon. R. N. Dunn, Judge.

Action to recover on a fire insurance policy. Judgment for the plaintiffs. *Affirmed.*

Lester P. Edge and Reed & Boughten, for Appellant.

Since the policy of insurance is a written contract, the parties having made and reduced their agreement to writing, to follow the rule permitting parol evidence to show waiver of terms would be no more or less than to permit parol evidence to vary the terms of a written instrument. (*Northern Assur. Co. v. Grandview Building Assn.,* 183 U. S. 308, 22 Sup. Ct. 133, 46 L. ed. 213.)

By sec. 13, ch. 185, Sess. Laws of 1913, the New York Standard Policy was made the standard policy of the state of Idaho, just as effectively as though it had been set out *in haec verba* upon the statute-books. (*State v. Brian,* 96 Neb. 278, 147 N. W. 689; *Bibbs County Loan Assn. v. Richards,* 21 Ga. 592; *People v. Fire Assn. of Philadelphia,* 92 N. Y. 311, 44 Am. Rep. 380; Sutherland's Statutory Construction, sec. 257; *Central of Georgia Ry. Co. v. State,* 104 Ga. 831, 31 S. E. 531, 42 L. R. A. 518; *Dew v. Cunningham,* 28 Ala. 466, 65 Am. Dec. 362.)

"The conditions of the standard policy cannot be waived except as provided therein and written or printed on the face of the policy." (13 Am. & Eng. Ency. of L., 2d ed., 223; *Oatman v. Bankers' Fire Relief Assn.,* 66 Or. 388, 133 Pac. 1183, 134 Pac. 1033; *Finlon v. National Union Fire Ins. Co.,* 65 Or. 493, 132 Pac. 712; *Howard v. Horticultural Fire Relief* (Or.), 150 Pac. 270; *Black v. Atlantic Home Ins. Co.,* 148 N. C. 169, 61 S. E. 672; *Kollitz v. Equitable Mutual Fire Ins. Co.,* 92 Minn. 234, 99 N. W. 892; *Bourgeois v. North-*

*western Nat. Ins. Co.,* 86 Wis. 606, 57 N. W. 347; *Anderson v. Manchester Fire Assur. Co.,* 59 Minn. 182, 50 Am. St. 400, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609; *Moore v. Hanover Fire Ins. Co.,* 141 N. Y. 219, 36 N. E. 191; *Hamilton v. Royal Ins. Co.,* 156 N. Y. 327, 50 N. E. 863, 42 L. R. A. 485; *Straker v. Phenix Ins. Co.,* 101 Wis. 413, 77 N. W. 752; 1 Cooley on Ins., pp. 528, 529; *Parker v. Rochester German Ins. Co.,* 162 Mass. 479, 39 N. E. 179; *Quinlan v. Providence etc. Ins. Co.,* 133 N. Y. 356, 28 Am. St. 645, 31 N. E. 31.)

"The insured is bound by the terms of the policy which he accepts, and the fact that no inquiries were made by the company or its agent, and no representations made by the insured, cannot strike out the provisions of the policy." (*Crikelair v. Citizens' Ins. Co.,* 168 Ill. 309, 48 N. E. 167; *Indiana Ins. Co. v. Pringle,* 21 Ind. App. 559, 52 N. E. 821; *Shaffer v. Milwaukee Mechanics' Ins. Co.,* 17 Ind. App. 204, 46 N. E. 557; *Harding v. Norwich Union Fire Ins. Soc.,* 10 S. D. 64, 71 N. W. 755; *Aetna Ins. Co. v. Holcomb,* 89 Tex. 404, 34 S. W. 915; *Sulphur Mines Co. v. Phenix Ins. Co.,* 94 Va. 355, 26 S. E. 856.)

The courts have unanimously held that as fraud and false swearing of itself was made by the policy a ground for forfeiture, fraudulent intent was not an element. (*Willis v. Horticultural Fire Relief,* 69 Or. 293, Ann. Cas. 1916A, 449, 137 Pac. 761; *Linscott v. Orient Ins. Co.,* 88 Me. 497, 51 Am. St. 435, 34 Atl. 405; *Claflin v. Commonwealth Ins. Co.,* 110 U. S. 81, 3 Sup. Ct. 507, 28 L. ed., 76.)

"When a mortgagee, independently of the owners and mortgagor, obtains a policy upon his own interest and at his own expense, for his sole benefit, upon payment of the loss to him, the insurance company is entitled to subrogation." (*Excelsior Fire Ins. Co. v. Royal Ins. Co.,* 55 N. Y. 343, 14 Am. Rep. 271; *Carpenter v. Providence Washington Ins. Co.,* 16 Pet. (41 U. S.) 495, 10 L. ed. 1044; *Concord Union Mut. Fire Ins. Co. v. Woodbury,* 45 Me. 447; *Dunbrack v. Neall,* 55 W. Va. 565, 47 S. E. 303.)

The right of subrogation does not depend upon the contract, but accrues as a matter of law. (*Thomas v. Montauk Fire Ins. Co.,* 43 Hun (N. Y.), 218, 5 N. Y. St. Rep. 481.)

E. R. Whitla, for Respondents.

The motion to require plaintiff to separately state two causes of action and the demurrer to the complaint were both properly overruled. In those states which have adopted the reformed pleading in its entirety this form of pleading is not only good but is proper. (*Aetna Ins. Co. v. Brannon,* 99 Tex. 391, 89 S. W. 1057, 2 L. R. A., N. S., 548, 13 Ann. Cas. 1020; *German-American Ins. Co. v. Hyman,* 42 Colo. 156, 94 Pac. 27, 16 L. R. A., N. S., 77; *Anderson v. War Eagle etc. Min. Co.,* 8 Ida. 789, 72 Pac. 671; *Rauh v. Oliver,* 10 Ida. 3, 77 Pac. 20; *Bates v. Capital State Bank,* 21 Ida. 141, 121 Pac. 561; *Poncia v. Eagle* (Ida.), 152 Pac. 208.)

Where the agent makes the mistake, the company must stand the loss; and if, in this case, the title was disclosed to the agent of the company and he made a mistake in making out the policy, upon alleging the facts the plaintiff would be entitled to recover. The mistake or neglect of an insurer's agent in making out a policy must necessarily fall upon his principal, rather than upon the insured, so long as he acts within the scope of his authority. (19 Cyc. 819; *Allen v. Phoenix Assur. Co.,* 12 Ida. 653, 88 Pac. 245, 10 Ann. Cas. 328, 8 L. R. A., N. S., 903; *State Ins. Co. v. Du Bois,* 7 Colo. App. 214, 44 Pac. 756; *Wich v. Equitable etc. Ins. Co.,* 2 Colo. App. 484, 31 Pac. 389; *National Mutual Fire Ins. Co. v. Barnes,* 41 Kan. 161, 21 Pac. 165.)

There is no statutory form of policy in Idaho. The provision cited by counsel in 1913, Sess. Laws, p. 598, sec. 13, is unavailing as a statutory form. It does not provide any form or refer to any form which is a matter of public record anywhere in the state of Idaho and adopt the same. The law itself must be complete before it leaves the legislature, so that one desiring to know the statute of the state may by referring to the statute itself, or to a matter of public record,

know exactly what the law is. (*O'Neil v. American Fire Ins. Co.*, 166 Pa. 72, 45 Am. St. 650, 30 Atl. 943, 26 L. R. A. 715; *S. P. R. Co. v. United States,* 171 Fed. 360; *Anderson v. Manchester Fire Assur. Co.*, 59 Minn. 182, 50 Am. St. 400, 60 N. W. 1095, 63 N. W. 241, 28 L. R. A. 609; *Dowling v. Lancashire Ins. Co.*, 92 Wis. 63, 65 N. W. 738, 31 L. R. A. 112; *King v. Concordia Fire Ins. Co.*, 140 Mich. 258, 103 N. W. 616, 6 Ann. Cas. 87.)

Both under the statutory form of policy and otherwise, it is the rule that where a party clearly represents his title to the property and the insurance company undertakes to insure the same, it cannot escape liability because of a misstatement of the title of insured in the policy. (*Eckert v. Century Fire Ins. Co.*, 147 Iowa, 507, 124 N. W. 170; *Arkansas Ins. Co. v. Cox,* 21 Okl. 873, 129 Am. St. 808, 98 Pac. 552, 20 L. R. A., N. S., 775; *Merchants' Mutual Fire Ins. Co. v. Harris,* 51 Colo. 95, 116 Pac. 143; *Creed v. Sun Fire Office,* 101 Ala. 522, 46 Am. St. 134, 14 So. 323, 23 L. R. A. 177; *Follette v. Mutual Accident Assn.,* 110 N. C. 377, 28 Am. St. 693, 14 S. E. 923, 15 L. R. A. 668; *State Ins. Co. v. DuBois,* 7 Colo App. 214, 44 Pac. 756; *Hough v. City Fire Ins. Co.*, 29 Conn. 10, 76 Am. Dec. 581; *Germania Fire Ins. Co. v. Hick,* 125 Ill. 361, 8 Am. St. 384, 17 N. E. 792; *Westchester Fire Ins. Co. v. Wagner,* 24 Tex. Civ. 140, 57 S. W. 876; *Parno v. Iowa Merchants' Mutual Ins. Co.*, 114 Iowa, 132, 86 N. W. 210; *Hoxie v. Home Ins. Co.*, 32 Conn. 21, 85 Am. Dec. 240; *Aetna Livestock, Fire and Tornado Ins. Co. v. Olmstead,* 21 Mich. 246, 4 Am. Rep. 483; 1 Wood on Fire Ins., p. 195, sec. 88; *Dahrooge v. Sovereign Fire Assur. Co.*, 175 Mich. 248, 141 N. W. 572; *Bryant v. Granite State Fire Ins. Co.*, 174 Mich. 102, 140 N. W. 482; *Walrod v. Des Moines Fire Ins. Co.*, 159 Iowa, 121, 140 N. W. 218; *Coats v. Camden Fire Ins. Assn.,* 149 Wis. 129, 135 N. W. 524; *Robbins v. Springfield Fire & Marine Ins. Co.*, 149 N. Y. 477, 44 N. E. 159; *Gray v. Germania Fire Ins. Co.*, 155 N. Y. 180, 49 N. E. 675; 1 Clement on Fire Ins., p. 451; *Matthews v. Capital Fire Ins. Co.*, 115 Wis. 272, 91 N. W. 675; *Welch v. Fire Assn. of Philadelphia,* 120 Wis. 456, 98 N. W. 227.)

False swearing in order to avoid a policy must be knowingly and wilfully done with a fraudulent intent. (19 Cyc. 855, 856; *Beyer v. St. Paul Fire & Marine Ins. Co.,* 112 Wis. 138, 88 N. W. 57; *Home Ins. Co. v. Mendenhall,* 164 Ill. 458, 45 N. E. 1078, 36 L. R. A. 374; *Runkle v. Hartford Ins. Co.,* 99 Iowa, 414, 618 N. W. 712; *Huston v. State Ins. Co.,* 100 Iowa, 402, 69 N. W. 674; *Boston Marine Ins. Co. v. Scales,* 101 Tenn. 628, 49 S. W. 743; *Merrill v. Insurance Co.,* 23 Fed. 245.)

The question of subrogation cannot be properly presented at this time. Defendant has not paid or offered to pay any sum of money whatever due to plaintiff. (1 Clement on Fire Ins., p. 379; *Phenix Ins. Co. v. First Nat. Bank,* 85 Va. 765, 17 Am. St. 101, 8 S. E. 719, 2 L. R. A. 667; *New Hampshire Fire Ins. Co. v. National Life Ins. Co.,* 112 Fed. 199, 50 C. C. A. 188, 57 L. R. A. 692.)

SULLIVAN, C. J.—This action was brought to recover upon a $2,500 fire insurance policy which was given to the plaintiffs to insure them against the direct loss or damage by fire of 250,000 feet of lumber situated in Kootenai county.

The answer denied the material allegations of the complaint and set up certain affirmative defenses. Upon the issues made the case was tried by the court with a jury and resulted in a verdict and judgment in favor of the plaintiffs for $2,500, with interest thereon. A motion for a new trial was denied, and this appeal is from the order denying the new trial.

Numerous errors are assigned, but, as we view the matter, only a few of them need to be specifically reviewed in this opinion.

It appears from the record that the plaintiffs had a mortgage on said lumber and that they had no greater or other interest than that of chattel mortgagees, but were in fact insured in the policy as sole owners of the property, and that being true, it is contended by counsel for appellant that plaintiffs cannot recover because of the following provision contained in said policy:

"The entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss . . . . or if the interest of the insured be other than unconditional and sole ownership."

It is contended by counsel for appellant that those provisions voiding the policy in case of a chattel mortgage or in case the insured is not the unconditional and sole owner are reasonable and ought to be enforced; while counsel for respondent contend that the appellant through its agent knew of the state of the title of the property in question before the policy was issued; that the insurance company knew before it issued the policy that the insured had only a mortgagee's interest in said property, and that said insurance was procured to protect said interest and for that reason appellant should be required to pay.

As to whether the company, through its agent, had full knowledge of said facts, the evidence is conflicting. The evidence of the plaintiff shows that the agent fully understood the interest they had in said lumber as mortgagees, while the defendant's witnesses testified to the contrary. The jury has passed upon this question and found in favor of the plaintiffs to the effect that the agent of the company, and the company, through its agent, had full knowledge of all those facts.

In regard to these contentions, we have two lines of decisions, some of the courts holding that where a company, through its agent, issues a policy with knowledge of existing facts which under the terms of the policy would render it void, that they thereby waive those provisions; other courts holding that since the policy of insurance is a written contract, the parties having made and reduced their agreement to writing, to follow the rule permitting parol evidence to show a waiver of the terms would be no more nor less than

to permit parol evidence to vary the terms of a written instrument, and for that reason they refuse to subscribe to the doctrine that if an insurance company, through its agent, issues a policy with knowledge of existing facts which under the terms of the policy would render it void, the company thereby waives those provisions.

In support of this latter contention, counsel for appellant cites *Northern Assur. Co. v. Grand View Building Assn.*, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. ed. 213, and the authorities therein cited. Mr. Justice Shiras, in delivering the opinion of the court in that case, quoted largely from the case of *Dewees v. Manhattan Ins. Co.*, 35 N. J. L. 366, and prefaced his quotation with the statement that that opinion contains an able and sound statement of the law on the question there involved. A part of the quotation is as follows:

"The assumption is, and must be, that the warranty, in its present form, was a mistake in the agent. But a mistake cannot be corrected, in conformity with our judicial system, in a court of law. No one can doubt that, in a proper case of this kind, an equitable remedy exists. 'There cannot at the present day,' says Mr. Justice Story, 'be any serious doubt that a court of equity has authority to reform a contract, where there has been an omission of a material stipulation by mistake. And a policy of insurance is just as much within the reach of the principle as any other written contract.' (*Andrews v. Essex Fire & M. Ins. Co.*, 3 Mason, 6, 10, Fed. Cas. No. 374.)"

The court there holds that in a proper case of this kind an equitable remedy exists and that this right would unquestionably exist in a court of equity, but that it could not be administered under the federal jurisdiction in a court of law. That rule applies to a line of cases cited by counsel for appellant upon this point which were determined by courts in states where the distinction between actions at law and suits in equity and the forms of all such actions and suits were not prohibited. But under the provisions of sec. 1, art. 5 of our state constitution, the distinction between actions at law and suits in equity is prohibited, and it is there provided

that there shall be in this state but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which proceeding shall be denominated a civil action.

In *Bates v. Capital State Bank*, 21 Ida. 141, 121 Pac. 561, this court in construing said sec. 1, art. 5, and sec. 4168, Rev. Codes, held that under those provisions the technicalities of the common law in regard to pleadings have been dispensed with, and that the plaintiff need only state his cause in ordinary and concise language, without regard to the ancient forms of pleading, and where that is done, the plaintiff is entitled to any relief, either at law or in equity, that his proof may warrant.

*In Coleman v. Jaggers*, 12 Ida. 125, 118 Am. St. 207, 85 Pac. 894, this court held that one of the objects of our practice act and the provisions of our state constitution in abolishing all distinctions between actions at law and suits in equity, and giving our district courts full and complete jurisdiction both at law and in equity, was to rid our system of a multiplicity of suits and a vexatious and cumbersome procedure, and to give litigants full and complete relief in a single action, where under the old practice several suits were necessary to accomplish that result.

We have no serious doubt but that courts of general jurisdiction of this state have authority to reform a contract, and a policy of insurance is just as much within the reach of that principle as any other written contract.

Counsel for appellant lays particular stress upon what he contends is the vice of the complaint in this case, in that it mingles legal and equitable causes of action, and this was the basis both of his motion in the lower court to require plaintiffs to separately state their causes of action, and of his demurrer upon the ground, among other things that "said complaint neither stated the form nor the substance of the agreement alleged to have been made between plaintiff and defendant." And in his brief he says: "He sued upon a written instrument and in his complaint alleged that

that was not the agreement of the parties, but did not set up the agreement which he alleged had been made.''

An inspection of the complaint discloses that plaintiffs made therein a concise and complete statement of the facts constituting their causes of action, including representations claimed to have been made by them to the agent concerning the property to be insured, and the mistakes claimed to have been made by the agent in writing the policy. They also attached to their complaint and made a part thereof a copy of the policy actually issued to them. We cannot conceive how the defendant corporation could have been in any way misled by the allegations of this complaint or misinformed as to the relief sought. It was incumbent upon plaintiffs to allege and prove the facts as to the contract which was actually made and as to the mistake on the part of the agent in reducing it to writing. Having done this, if the evidence warrants it, they are entitled to a judgment in accordance with the true contract thus shown, for the recovery of their insurance money.

The only question before us is whether or not plaintiffs had a valid insurance contract with the defendant company. Under our practice and the decisions of this court, they may plead and prove any state of facts which entitles them to judgment, either at law or equity. The lower court did not err in denying defendant's motion to require plaintiffs to separately state their causes of action, or in overruling the demurrer to the complaint.

As we have already stated, this policy contained a provision that it should be void under certain conditions, among which are specified ''if the interest of the insured in the property be not truly stated herein,'' and ''if the interest of the insured be other than unconditional and sole ownership.'' In 1913 the legislature of this state enacted an insurance law, (Sess. L. 1913, p. 593), sec. 13 of which is as follows: ''On and after the first day of January, 1914, no fire insurance company, except county mutuals, shall issue any fire insurance policy covering on property or interest therein in this state, other than on the form known as the New York

standard, as now or may be hereafter constituted, except.as follows: . . . . ''

Counsel for appellant contends that by this act the New York standard·form of policy was made the standard insurance policy in this state just as effectively as if it had been set out *in haec verba* in the act, and that being the law of the state, plaintiffs in this case must be presumed to have known its contents, even before they received the policy, including the provisions that under certain conditions the policy would be void, and that this provision could not be waived, as the law itself prescribing a standard policy so provided. Counsel for respondent, on the other hand, contends that the act in question does not effectively provide a statutory form of insurance policy for this state, because the act itself does not set forth any form, or refer to any form, which is a matter of public record anywhere in this state, and that the legislature of this state cannot, merely by referring in a general way to some form of policy that has been adopted in another state, make it a part of the laws of this state, at least without requiring a form to be accessible to our citizens in some public record of the state, so they may be able to determine what the law is. Counsel for appellant cites as leading cases in support of his contention, *State v. Brian,* 96 Neb. 278, 147 N. W. 689, and *Oatman v. Bankers' Fire Relief Assn.* 66 Or. 388, 133 Pac. 1183, 134 Pac. 1033. An examination of these cases discloses that in the Nebraska case the law providing for a statutory form was more definite than the Idaho statute, in that it provided that the form should be prepared by a state insurance board, on the basis of the New York standard form. At the same time the court held that that provision of the Nebraska statute providing that the New York form should be used as a standard as ''it may be hereafter constituted'' was invalid, because its effect would be to control the powers and duties of Nebraska officials by the future action of the legislature of New York.

In the Oregon case cited, it appears that the prescribed conditions to be inserted in the. standard insurance policy of

Oregon, were specifically set forth in the statute itself. These cases are therefore not exactly in point construing sec. 13 of our 1913 statute, which appears to be unique in insurance legislation. However, we do not believe it was the intention of our legislature in seeking to enforce a standard form of policy in this state, to withdraw from the insured any protection theretofore afforded them under the law of contracts, or to confer upon insurance companies any immunity for the carelessness or negligence of their agents which they had not before enjoyed. Sec. 18 of art. 3 of our constitution prohibits the amendment of existing laws of this state by reference to their title, and commands that such sections as are amended be set forth at length in the new statute, and in view of this constitutional provision it would seem somewhat anomalous if the legislature could nevertheless adopt the law of another state by reference, not to its title even, but to something still more indefinite, namely, "the New York standard, as now or may be hereafter constituted."

From these considerations we conclude that the plaintiffs in this case cannot be held to have had the constructive notice of the contents of their policy which appellant seeks to fasten upon them under the law in question, and that their contractual rights were in no way abridged by the 1913 statute.

Much has been said in the briefs of counsel in this case with reference to the legal principle of mutual mistake, waiver and estoppel, and their applicability to the facts of this case. As we view the matter, the conduct of the insurance company's agent in writing a policy of insurance which did not disclose the true title or interest of plaintiffs, although they had stated the nature of that interest to the agent, knowledge of which therefore is imputed to the company, followed by the acceptance of premium on such policy by the company and the reliance of plaintiffs on its validity, effectually estops the insurance company from setting up the defense that the policy is void because the plaintiffs were not in fact sole owners of the property insured.

In the case of *Allen v. Phoenix Assur. Co.*, 12 Ida. 653, 88 Pac. 245, 8 L. R. A., N. S., 903, 10 Ann. Cas. 328, some of the facts were similar to those in the case at bar, and the court there said: "In this case it does not definitely appear whether the insured made a written application for insurance or simply had a parol understanding with the agent who solicited the risk. If the title disclosed were held to be short of the requirement contained in the policy, still it would not defeat the right to recovery, if it could be shown that the insured, by their written application truly and correctly represented the state and condition of the title to this property. In such case the insurer could not insert a contrary provision in the policy with knowledge of the true condition of the title, and thereby bind the insured and defeat his right of recovery in case of loss." (Citing authorities.) We particularly call attention to the last sentence of the above quotation, which seems in point under the facts of this case.

We are aware that there is a considerable divergence among the reported cases as to the legal principle to be applied in cases of this kind. This is quite apparent from an examination of the cases cited by counsel. Some of them take the view that such action on the part of the agent in mistakenly reducing the insurance contract to writing should be considered as a mutual mistake between the parties, and that only the remedy appropriate to that class of cases should be applied. Others go further and consider the conduct of the agent a waiver of the right of the company to declare the policy void under specific conditions. A third class of cases goes still further, and holds that the insurance company is estopped by such conduct on the part of its agent; that is to say, that it cannot assume one attitude as to known facts for the purpose of making the contract, and then be permitted to assume another and inconsistent attitude in order to avoid it. Owing to the great variety of facts and circumstances which might be shown in cases of this kind, it is apparent that some of them might properly fall in one class and some in another. In the case at bar, the follow-

ing excerpt from the opinion of the New York court of Appeals in the case of *Robbins v. Springfield Fire & Marine Ins. Co.*, 149 N. Y. 477, 44 N. E. 159, appears to us to be in point:

"The rule that an insurance company will not be permitted to defeat a recovery upon a policy issued by it, by proving the existence of facts which would render it void, where it had full knowledge of them when the policy was issued, is too well established by the authorities in this state to require further discussion. . . . . Whether the decisions in this class of cases proceed upon the charitable theory that the insurance company by mistake omitted to make the required indorsement, or intended to waive the provisions regarding it, or upon the idea that its purpose was to defraud the insured, and is for that reason estopped, is of but little consequence, as any one of these theories is sufficient to avoid the defense relied upon in this case."

One of the defenses of the defendant corporation in this case was that plaintiffs had been guilty of falsely swearing in their proof of loss, thereby making their policy void. The record shows that the plaintiff Carroll made affidavit in the proof of loss that no other person but himself and Ward had any interest in the lumber which had been destroyed. The evidence shows that the company's adjuster wrote the proof of loss himself, and that Carroll, who was an unlettered man and not familiar with business of that sort, signed and swore to it without question, relying upon the adjuster for its correctness.

Appellant assigns as error the instructions given by the court to the effect that before they could find for the defendant they must not only find that plaintiffs swore falsely in their proof of loss, but that such false swearing was knowingly and wilfully done for the purpose of deceiving defendant and was done by them with a fraudulent intent. These instructions were not erroneous under sec. 8 of the insurance law of 1913 (Sess. L. 1913, p. 597), the language of which is: "Any person who, *knowing it to be such,* presents or causes to be presented, a false or fraudulent claim, or any proof in support of such a claim, for the payment of a loss upon a

contract of insurance, or who prepares, makes or subscribes false or fraudulent account, certificate, affidavit, or proof of loss, or other document in writing, with intent that the same be presented or used in support of such a claim, shall be guilty of a misdemeanor." Under this statute the intent is an essential element in the offense of false swearing, and it does not appear from the evidence that the false statement in the proof of loss was knowingly made by plaintiff.

Appellant also assigns as error the giving of instruction No. 10, wherein the court instructed the jury that in arriving at the amount of loss under the policy they should "determine the same by ascertaining the cash value of the lumber in the mill-yard, and then deducting therefrom fifteen per cent of the manufacturers' net market value of similar stock in like quantity at the time and place of the fire, as the policy provides that fifteen per cent shall be deducted from the cash price in arriving at the amount to be paid under the policy." It is contended that the court erred in this instruction in specifying "the cash value of the lumber in the mill-yard" as the measure of loss, when the true measure was the cash value of the lumber destroyed. It is obvious that the court's instruction in this respect might tend to mislead the jury, but it had been shown by the evidence that at the time of the fire there was about 256,000 feet of lumber in the yard, all but 4020 feet of which was destroyed. The policy covered 250,000 feet. It is also shown by the evidence that the cash value of this lumber, taken as a whole, was "between $11 and $12 per thousand." In view of this evidence, we do not think the jury was prejudicially misled by this instruction or that reversible error was committed in giving it, although the language used by the court was inexact.

Appellant assigns as error the giving of a number of other instructions and the refusal to give certain instructions offered on behalf of defendant. We have carefully examined the instructions given by the court, as well as the ones refused, and are of the opinion that the instructions, taken as a whole, fairly and fully state the law applicable to the facts of this case, and that no reversible error was committed by

the court in giving or refusing to give the instructions last above referred to.

Appellant contends that the court erred in denying its motion for subrogation. In passing upon that motion the court said: "It is by the court ordered that the motion of the defendant for subrogation to the rights of plaintiffs under said mortgage in proportion to the amount of the verdict of the jury be, and the same hereby is, deferred until such time as defendant shall pay to the plaintiffs the amount of said verdict and judgment rendered thereon, or pay said amount into court for the use and benefit of said plaintiffs."

It thus appears that the trial court did not definitely determine the question of subrogation. Clearly, under the law the appellant is not entitled to subrogation, in any event, until it has paid or offered to pay the judgment in this case. Counsel for respondent contend that there is no subrogation clause in the policy and therefore it must be covered by the common-law rule, and cite 1 Clement on Fire Insurance, p. 378, where the author says: "Where the insurance is not sufficient to cover the mortgage debt, the company takes nothing by subrogation and assignment until the mortgage is paid or tendered in full, both principal and interest."

However, the trial court did not deny the motion to subrogate, but simply held the matter in abeyance until such time as the company would make or tender payment of said judgment in full, at which time it reserves the right to take up and decide said question.

There is nothing in the contention of appellant that the court erred in denying said motion for subrogation.

Some other questions were raised on the motion for a new trial, one in particular in regard to newly discovered evidence. We assume that the appellant does not rely upon that, since counsel have not referred to it in their brief.

We therefore conclude that the judgment of the trial court must be affirmed, and it is so ordered, with costs in favor of respondent.

Budge and Morgan, JJ., concur.